SCOTT WILSON, Attorney General,

GEORGE R. HALL, Relator,

*vs.*

C. H. McCARRON.

Androscoggin.    Opinion September 10, 1914.

*Appointment.   City Marshal.   Expiration of Term.   Officer.   Petition.   Police Force.   Quo Warranto.   Term.   Vacancy.*

1.   When an office is created by Statute which provides that it shall be filled by election, or appointment, for a term of years, and is silent in regard to the time when the term shall commence, and there are no special provisions for filling the vacancy in the office, it must be held that the term of the office begins when the appointee is appointed and qualified.

2.   When it becomes necessary to appoint a Chief of Police under the new Charter, by reason of death, removal or resignation, or to fill the place of one whose term has expired, the appointee holds this office for three years from the date of his appointment and qualification, unless sooner removed.

3.   The Charter, as amended by the Act of 1896, does not fix the time when the term of office of Chief of Police shall commence. It only provides for his appointment and that he shall hold the office for three years, unless sooner removed.

On report.    Petition dismissed with costs.

This is a petition in the nature of quo warranto, to determine the title to the office of city marshal of the city of Lewiston, held by the respondent and claimed by the relator, George R. Hall.    McCarron filed an answer to the information, and said Hall filed a replication to the answer of said McCarron.    By consent of the parties, the cause was reported to the Law Court for determination upon the evidence submitted, including the agreed statement of facts.

The case is stated in the opinion.

*Newell & Skelton,* for George R. Hall, relator.

*John A. Morrill, Louis J. Brann,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

HALEY, J. This is a petition in the nature of quo warranto, to determine the title to the office of city marshal of the city of Lewiston, and is before this court upon report.

Prior to 1880 the city marshal, and all members of the police force of the city of Lewiston, were chosen for one year, being elected by the City Council on the third Monday of March, or as soon thereafter as convenient, and served from the first day of April.

In 1880 the legislature enacted Chap. 293 of the Private and Special Laws, which was approved by the Governor on March 16, 1880, and took effect upon its approval by the City Council of the city of Lewiston prior to March 25th of that year.

Sec. 1 of said Act reads:

"The city marshal, deputy marshal and policemen of the city of Lewiston, shall hereafter be appointed by the mayor, by and with the advice and consent of the aldermen. The city marshal shall hold his office for the term of two years, and the remainder of the police force shall hold their office for the term of three years; providing, however, that the first year after this act shall take effect, one-third in number, as near as may be, of said police force, shall be appointed for the term of one year, one-third in number, as near as may be, shall be appointed for the term of two years, and one-third in number, as near as may be, shall be appointed for the term of three years, and there shall be appointed each year thereafter, one-third in number, as near as may be, of said force, subject, however, after a hearing, to removal at any time by the mayor by and with the advice and consent of the aldermen, for inefficiency, or other causes."

The police force was organized under this act by appointments made March 25, 1880, when Hillman Smith was appointed and confirmed as city marshal for two years, and March 20, 1882, he was reappointed and confirmed for two years. January 16, 1883, the resignation of Hillman Smith as city marshal was accepted. On January 16, 1883, George W. Metcalf was appointed and confirmed to fill the unexpired term of Hillman Smith. March 12, 1885, John French was appointed and confirmed as city marshal for the term of two years from April 1, 1884. March 22, 1885, Daniel Guptil was appointed and confirmed as city marshal for two years. The last

two appointments resulted in a petition for a writ of mandamus by John French, which case is reported in the 79th Maine, 426, and is relied upon by the petitioner in this case as giving the correct construction of the act in question. After said Guptil had served out his term other marshals were appointed for the term of two years, were all confirmed and served their terms down to March 28, 1910, when Arsene Callier was appointed city marshal by the mayor, but his appointment was rejected by the aldermen. April 1, 1911, Arsene Callier was appointed and confirmed city marshal for two years, and on March 18, 1913, C. H. McCarron, the respondent, was appointed and confirmed city marshal for the term of two years from the first day of April of that year. March 31, 1914, George R. Hall, the relator, was appointed and confirmed for a term of two years from April 1, 1914.

It is the claim of the relator that the terms of office of city marshal are successive terms of two years each, reckoning from the first acceptance of the act and terminating the last day of March of the even years, regardless of what vacancies occur during any term, and that such being the case, Callier's appointment of April 1, 1911, legally entitled him only to serve out the unexpired term then existing, that his occupancy after March 31, 1912, was de facto only; that the office was in law vacant, and that, when McCarron was appointed on March 18, 1913, there remained to be filled only the unexpired term of two years from April 1, 1912. When the act of 1880 was passed . and accepted by the City Council, the charter provided that the City Council should annually, on or after the third Monday of March, elect and appoint all subordinate officers for the ensuing year, the same to be chosen and vacancies filled for the current year, but that provision does not apply to the city marshal of the city, because, by Sec. 2 of Chap. 293 of the Special Laws of 1880, it is provided that "all acts and parts of acts inconsistent with this act are hereby repealed," and as the act provides that the city marshal shall hold his office for the term of two years, it is inconsistent with the provisions of the charter stating that subordinate officers shall be elected and vacancies filled for the current year, and we must look to the act of the legislature of 1880 in determining the term of office of city marshal, whether appointed to fill a vacancy caused by death, resignation, removal, or the refusal of the aldermen to advise and consent to the appointment (by the mayor) of a person to that office.

The petitioner claims that the case of *French* v. *Cowan*, 79 Maine, 426, is conclusive of the question in issue in this case. That was a petition for a writ of mandamus, and in that proceeding it was sought to try out the title to the office of city marshal of the city of Lewiston by rival claimants, under the act of 1880. The respondent claims that, as that case decided that mandamus was not the proper proceeding to try out the title of a public office, the only rule of law declared in that case was upon that branch of the case, and that the case was correctly decided because, as the respondent says, it is clear that mandamus was not the proper remedy. It is true that in the opinion the court discussed the question of when the term of office of an incumbent of the office of city marshal begins, and rules that the office of city marshal begins the first day of April of the even year; but it was not necessary to decide that question to dispose of the case, and there was a dissenting opinion filed upon that branch of the case. And the respondent contends that, so far as *French* v. *Cowan* holds, the term of office of the city marshal begins April first of the even year, and continues until the last day of March of the succeeding year, it not being necessary for the decision of the case that the question should be re-examined.

The opinion of the Justices, 61 Maine, 602, holds that judges and registers of probate who are elected to those offices are entitled to hold them for a term of four years from the first day of January next succeeding their election, although their elected predecessors may have vacated their offices before the expiration of the full term for which they were chosen. The opinion shows the distinction between the case of a person holding an office for a definite term, and where the office holder is a member of a board, whose terms expire at different times, and holds "that the court of county commissioners consists of a board of officers, the election of whom was so fixed by law as to occur upon different years. There was to be an annual election of one of its members. The mere expiration of time did not and could not leave the court vacant. Vacancies might occur in the board by death or resignation. To meet this contingency, and still preserve the annual election of one of its members, the statute provided for a choice to fill the place that was vacant," explaining the opinion of the Justices in the 50th Maine, 608.

The case of *Hall* v. *Brown*, 59 N. H., 555, cited in *French* v. *Cowan*, was an action of assumpsit in which a contractor sought to enforce a

lien upon timber and lumber that the complainant had cut and hauled by himself and servants in his employ, and it was sought to enforce the lien both for his services and of the men in his employ, and does not bear upon the question in issue in this case.

In *People* v. *McCleve*, 99 N. Y., 83, cited in *French* v. *Cowan*, the question in issue was the term of office of a person appointed as police commissioner of the city of New York. Sec. 25 of the act in question "vested in the mayor the power to nominate and, with the consent of the board of aldermen, to appoint heads of departments and all commissioners, including the commissioners of police, (with certain exceptions not material here), but provided that the officers of all such heads of departments, and persons other than those first appointed, shall commence on the first day of May, but the heads of departments, consisting of a board of commissioners first appointed after the passage of this act shall, except as herein otherwise expressly provided, be two, four and six years, respectively, and the board of commissioners of police first appointed as aforesaid, shall hold their offices, one, two, three and four years, respectively. The person first appointed shall take office on the expiration of the term of office of the present incumbent, and further provided any nomination or election to fill any vacancy which shall hereafter occur by reason of the expiration of the term of one officer, or from any other cause, and which shall not be created by anything in this act providing for the termination of the term of office of any person, or persons, now in office, shall be made to the board of aldermen within ten days from the day of the date of any such vacancy, and any person who shall be appointed to fill any such vacancy shall hold his office for the unexpired term of his predecessor." The court say, "this clause places it beyond doubt that an appointee to fill a vacancy caused by the death, resignation or removal of an incumbent during his term, holds only for the remainder of such term or period, which of course may be much less than six years."

In that case the act expressly provided that a person appointed to fill a vacancy should only hold for the unexpired term, while the act of the legislature of 1880, now under consideration, does not contain any such language; but does provide that the city marshal shall hold his office for the term of two years, which is clearly distinguishable from the New York case, as is the case of *State* v. *Mayor of LaPorte*, 28 Ind., 248, in which case the act of incorporation provided, "that,

after the first general election said officers shall hold their offices for two years each," and that annually there shall be chosen by the legal voters of their respective wards, "one councilman to be determined by lot at the first regular meeting after the election, shall hold office for two years, and the other to be determined in like manner, shall hold his office for four years; and biannually thereafter, one councilman shall be elected by the voters of each ward," and the court held the evident intent of the section cited was that only one councilman for each ward should be elected every two years for a period of four years, not the case of an officer appointed to the office for a definite term, but the case of one member of a board going out of office, and as it was the evident intent of the legislature that it shall be a continuing board, it is clearly distinguishable from this case, as clearly explained in the opinion of the Justices, 61 Maine, 602, holding that judges and registers of probate are appointed to hold their offices for the term of four years, in the following language: "It will be perceived that no other limitations than four years is imposed, except in the case of executive appointments. This term seems to be a fixed and positive term attached to an election. The only mode of permanently filling the office, however it becomes vacant, is by election, in which case the constitution says they shall hold their office for four years. These provisions are clear and unambiguous."

There is no provision of the law of 1880 to fill the office of city marshal of Lewiston, except by the mayor and aldermen of the city, and the law states, in clear and unambiguous language, that the marshal shall hold his office for the term of two years. There is no different rule of construction of that act of the legislature than of the constitution; they both speak in clear and unambiguous language.

The petitioner urges upon our attention the case of *Baker, Governor,* v. *Kirk*, 33 Ind., 523, but an examination of the case shows that it is not a similar case to the case at bar, and that the principles of law governing that case are the same that this court applied to the board of county commissioners. In that case the question was when the term of office of one member of the board of prison directors began, and the court uses this language: "It is very evident that the term of office of a prison director, as fixed by the above law, after the expiration of the term of office of the person first elected, is for a period of four years. It is equally plain that the object of the legis-

lature in providing that one of the directors first elected under this law should serve for two years, and that two of them should serve for four years, was to prevent the directors from all going out of office at the same time."

The same question in this case was passed upon in *Smith* v. *Cosgrove,* 71 Vt., 196, and the case is so similar that we quote: "Sec. 215 of the charter as amended by the act of 1896, provides for a regular police force for the city, consisting of a chief of police, who shall be appointed by the mayor and shall hold his office for three years, unless sooner removed, and such number of other police officers as the mayor shall deem necessary for the welfare of the city, who shall hold office for such term, not exceeding three years, nor less than one year, as shall be designated by the mayor in his appointment.

"By this section, it is clear that, whenever a chief of police is first appointed under the charter, he holds his office for three years from the date of his appointment, unless sooner removed; and we look in vain for any authority in the charter, as made to read by the act of 1896, for appointing a chief of police for a shorter period. Sec. 277 of the act provides, in part, that the city officials holding office therein under and by virtue of the general law of the State, or the acts or parts of acts thereby amended or repealed, shall hold office until the expiration of their current term. . . . . . . When it becomes necessary to appoint a chief of police under the new charter by reason of death, removal, or resignation, or to fill the place of one whose term has expired, the appointee holds this office for three years from the date of his appointment, unless sooner removed. The language of this section is plain and unmistakable, and there is nothing in the charter relating to the filling of a vacancy in the office of chief, or appointment to that office, that in any way limits or qualifies its provisions. The charter, as amended by the act of 1896, does not fix the time when the term of office of the chief of police shall commence. It only provides for his appointment, and that he shall hold the office for three years, unless sooner removed. In the absence of any provision of the charter fixing the time when his term shall commence, it must be held that his term begins when he is appointed and qualified, and continues for three years, unless he be sooner removed. When a statute creates an office and provides that it shall be filled by election or appointment for a term of years, and is silent in regard to when the term shall commence, and makes no

special provision for filling a vacancy in the office, or respecting the term for which one appointed to fill the vacancy shall hold the office, and there are no general provisions of the statute that are applicable, there are no grounds for inferring an exception in case of a person elected or appointed to the office when it has become vacant by reason of the death, resignation or removal of his predecessor." The court cites *People* v. *Green,* 2 Wend., 266; *Crowell* v. *Lambert,* 9 Minn., 283; *People* v. *Burbank,* 12 Cal., 378; *People* v. *Townsend,* 102 N. Y., 430, and *Sansburg* v. *Middleton,* 11 Md., 296, as holding to the same effect.

In *Winter* v. *Sayre,* 118 Ala., McClellen, J., upon page 61, says: "For what the legislature has done, as clearly shown by the act, is this: They have provided that each incumbent by executive and senatorial appointment shall hold his office for six years, not that each term shall endure for six years—the word term is not used in the act, except in reference to the then incumbent who was in for a fixed term of six years—not that the incumbency of the office shall be divided into terms of six years each, but that each judge so appointed shall be entitled to hold the office for that period. The legislature could not make him hold it for that period, it could not keep him from dying or resigning; but it could secure to him the right to hold for that length of time if he chose, and lived, to exercise it. And that is what they have done and all they intended to do in this statute. . . . . . They have not marked the office off into fixed terms of election with equal periods between. They have secured to the incumbent the right to serve for a given period. If he serves that period it is all well and good. If he dies, or resigns, or is removed, the period ceases; and the appointee who comes after him takes for a like period, not for so much of the time his predecessor was entitled to hold as he did not in fact hold, but for the full period of six years initiated upon his confirmation by the Senate."

In *Hope* v. *Richie,* 100 Ky., 66, it was held that where by statute an inspector of illuminating oil "shall remain in office for four years" and the incumbent dies during that period, the appointment of his successor is only for the unexpired part of the term, and not for a full term of four years, although the order of appointment so recited. The opinion in the above case cites no cases to support the position taken by the court, and it says: "It is conceded that the apparent weight of authority is against the conclusion we have reached," and

quotes from Throop on Public Officers, Sec. 319: "The authorities are not entirely harmonious respecting the duration of the term of an officer elected by the people or appointed by the governor, or some other officer or board of officers, to fill a vacancy, where the constitution has failed to specify the duration of his term, or where a provision upon that subject is of doubtful construction; but the weight of authorities is decidedly in favor of the proposition that a person so chosen holds for a full term, and not merely for the unexpired term of his predecessor's term."

It is to be noticed that in the above case the court said: "We have concluded, though with some hesitation, that the apparent purport of the peculiar language of the statute must yield to the general legislative purpose prevalent in this State." The following cases are to the same effect as the opinion of the Justices, 61 Maine, 602; *Attorney General* v. *Bruents*, 3 Wis., 787; *People* v. *Contant*, 11 Wend., 132; *Keys* v. *Mason*, 3 Sneed, 6.

In Mechem on Public Officers, Sec. 386, it is stated: "The statutes creating public officers usually prescribe the limits of the terms provided for, fixing the dates at which they will begin and end. The date of the commencement of the term is ordinarily fixed for some appreciable period after election or appointment, in order to give the newly chosen officer time to arrange his affairs and to qualify in the manner prescribed. Where, however, no time is fixed, the term will begin on the date of the election in the case of an elective officer, and at the date of appointment where the officer is appointed."

The words of the act of 1880, in fixing the term of the office of marshal, are; "The City Marshal shall hold his office for the term of two years." In *State* v. *Tallman*, 24 Wash., 426, the court, in discussing the meaning of the word "term" as applied to an office, says, upon page 430: "Term as applied to time, signifies a fixed period, a determined definite or prescribed duration. A term of office is a fixed period prescribed for holding office. *People* v. *Brundage*, 78 N. Y., 403. The word "term" when used with reference to the tenure of office, ordinarily refers to a fixed and definite time. Mechem on Public Officers, Sec. 385. In fact, the expression "term of office" so clearly defines itself, the words used are so well understood, and their meaning so generally accepted, that it is useless to attempt to further define it." Webster's Dictionary defines "Term," "As a

limited or definite extent of time; the time for which anything lasts, as a term of five years, the term of life, a presidential term."

If the marshal should die, resign or be removed one week before his term expired, if the petitioner's contention is right, then his successor, if appointed within the week, would only hold the office for the balance of the week, although the statute under which he was appointed expressly states, "The city marshal shall hold his office for the term of two years." He could not have held it before his appointment, and during the legal term of his predecessor, if we give to the language of the act the obvious import of the words, the ordinary popular significance of which is, that the marshal holds his office for the term of two years from his appointment, if he so long live, unless he resigns, is removed or the legislature changes the law.

The word "term" used in the act of 1880, describing the term of the city marshal, was used to designate a fixed, definite period of time that a person appointed to the office should hold the office.

In *French* v. *Cowan*, in discussing the question of successive terms, the court considered both the office of marshal and of police officers, as if their terms were the same, as appears from the following from page 433: "In the case before us the statute, it is true, does not designate any definite point of time from which the term of the several officers therein mentioned shall commence, yet, the evident purpose of the statute requires, for the police force at least, that a definite time be fixed from which the several terms shall begin." And upon page 432, the opinion reads: "If we were to give any other construction to this statute in relation to commencement, and duration of the terms of office of the marshal and the policemen, the term of service of the appointees might soon become such as to entirely destroy the force of the provision that one-third, as near as may be, shall be appointed each year." While the above statement as to the police officers may be the correct interpretation of the law as to those officers, it is not applicable to the office of city marshal which, by the statute, is for a fixed and definite term of years. There is nothing in the act of 1880 providing that one appointed city marshal to succeed one who had not served a full two years, shall only serve out the unexpired term of his predecessor.

The opinion does not notice the distinction between the terms of office of the city marshal, which is for a fixed and definite term, with authority in the appointing power to fill a vacancy in the office

by appointment, and that, in the office of policemen, who are members of a continuing board of public officers, and the plain intent of the act being that one-third of the members of the police officers should be appointed each year, so that always the board should consist of at least two-thirds of experienced officers, a distinction fully explained in the opinion of the Justices, 61 Maine, 602. As the act of 1880 provides that the city marshal shall hold his office for the term of two years, and does not provide that the person appointed to that office to succeed one who did not serve out the full term for which he was appointed, shall serve only the unexpired term of his predecessor, the plain and obvious meaning of the act, as well as the weight of authority, is that, whenever there is a vacancy caused by death, removal, resignation, or the failure of the mayor to appoint, or the board of aldermen to confirm an appointment to that position, there is a vacancy in the office and not in the term, and that when Arsene Callier was appointed and confirmed as city marshal on April 1, 1911, he was entitled to hold the office, by virtue of that appointment, for the term of two years from his appointment, that is, to April 1, 1913, and when the respondent was appointed city marshal and confirmed March 18, 1913, for the term of two years from the first day of April, 1913, he became entitled to hold the office for the full term of two years, that is, to April 1, 1915, and the respondent is entitled to judgment.

*Petition dismissed with costs.*